Stephen R. Bosin, Esq.
70 Grand Ave. Suite 200
River Edge, N.J. 07661
(201) 342.4117
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------X

PRISCILLA TROESCHER

      Plaintiff

v.

BURGER MAKER, INC.

      Defendant

---------------------------------X

Civil Action No.

**COMPLAINT AND JURY DEMAND**

Comes now Priscilla Troescher ("Plaintiff") for her Complaint against Burger Maker, Inc. hereinafter ("Defendant") states as follows:

### JURISDICTION AND VENUE

1. This suit is brought under the Family and Medical Leave Act, 29 U.S.C. § 2601, et. seq ("FMLA") and under the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 et seq. and the New Jersey Conscientious Employee Protection Act, ("CEPA") 34:19-1 et seq. and the New Jersey Wage Payment Act, N.J.S.A. § 34:11-4.1 et seq.

2. Jurisdiction is conferred on this Court by virtue of Title 28 U.S.C. 1331 and this courts supplemental jurisdiction based on 28 U.S.C. §1367.

3. Venue is proper in the District of New Jersey by virtue of Title 29 U.S.C. 1132(e).

## THE PARTIES

4.  Plaintiff resides in Clifton, Passaic County, New Jersey. She began her employment with Burger Maker, Inc. ("Defendant") in 2009 and was employed continuously by Defendant until her employment was terminated on January 24, 2025.

5.  Defendant was formed under the laws of the State of New York, and is located at 666 16th Street, Carlstadt, Bergen County, New Jersey, where Plaintiff was employed and is engaged in the meat and poultry processing business.

6.  Defendant is an employer within the meaning of 29 U.S.C. §261(4)(A) and Plaintiff is eligible for FMLA leave under 29 U.S.C. 2611(2).

## PLAINTIFF'S CLAIMS

### COUNT ONE
### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

7.  At no time during her employment had Plaintiff been disciplined or suspended. Nevertheless, after nearly seventeen years of dedicated employment Plaintiff was terminated in violation of the Family and Medical Leave Act, 29 U.S.C. §2615.

8.  In July 2024, Plaintiff had been diagnosed with anxiety and depression and disclosed her condition to her supervisor, Robert Ciallella, during their monthly meetings. She explained that although she was fully capable of performing her primary responsibilities that she needed temporary assistance with tedious ancillary tasks as a reasonable accommodation under NJLAD.

9.  When no assistance was provided, she escalated her request to Scott Skonieczny in Human Resources. Mr. Skonieczny suggested she take FMLA leave. Plaintiff reiterated that she did not seek leave, only support to continue working. Mr. Skonieczny directed her back to Mr. Ciallella, who again rejected her request for assistance.

1

10. As a result of not receiving the reasonable accommodation that she had requested Plaintiff fell behind in processing trades and daily tasks. Instead of being provided with assistance or job restructuring, on December 23, 2024 she received a Performance Improvement Plan (PIP). Since there would be no performance issues had she received an accommodation, the PIP was clearly being used to support the decision that had already been made to terminate her employment. The pretextual nature of the PIP is evidenced by the fact that some of the alleged deficiencies occurred when she was not at work but on PTO (paid time off) days.

11. The misuse of the PIP is also evidenced by the fact that she was given only 30 days to complete tasks that were impossible to perform because Mr. Ciallella had deleted a year's worth of her work from the Salesforce platform that Plaintiff had been using.

12. During a Skype call with Robert and Scott on December 19, 2024 regarding the PIP, Robert explicitly stated that it was due to her "work not getting done." Rather than accommodating her disability, Defendant increased her workload, thereby exacerbating her mental health issues. Plainittiff was then told that if she did not return to the office the week of December 30, 2024, she would not be paid, a coercive tactic clearly designed to force her back without regard to her condition.

13. On January 12, 2025, Plaintiff requested FMLA leave due to extreme emotional distress which she considered to be a serious health condition. Defendant agreed that she was empiercing a serious health condition thereby satisfying the eligibility requirement of 29 U.S. C. §2612(e) and her leave was approved on January 13, 2025.

14. On January 20, 2025 Plaintiff sought one additional week of FMLA leave as she was still suffering from anxiety and had to request sleep medication from her therapist.

2

15. Plaintiff's request, however, was denied on the grounds that it had not been submitted two weeks in advance. When she explained that such notice was not practical due to the unpredictable nature of her mental health condition and therefore that she could not do this, Defendant responded that "If you don't come to work, you won't get paid." She replied that she was not mentally well enough to return.

16. Despite being entitled to additional week of FMLA leave, on January 24, 2025 Plaintiff received text messages from anonymous coworker wishing her well.

17. Although Defendant never sent a notice of termination to Plaintiff, it did, however, terminate her pay and benefits as of January 24, 2025 and she was never asked to return to work.

18. Prior to being terminated Plaintiff was informed that if she wanted additional leave she would be violating company policy and would be terminated. Defendant's Employee Handbook, however, states: "Employees who fail to give 30 days' notice for foreseeable leave without a reasonable excuse for delay or otherwise fail to satisfy FMLA notice obligations may have FMLA leave delayed or denied." See annexed page from the Employee Handbook.

19. Even if this policy applied, the remedy was delay or denial of leave, not termination particularly when she had accumulated PTO (paid time off) and could have used her leave time to rest recuperate before returning to work.

20. In any event whether or not she was entitled to additional leave under Defendant's policy, she was entitled to this leave under FMLA, 29 U.S.C. § 2614(b) and the denial of her right to this leave was a clear violation of FMLA, 29 U.S.C. § 2615.

21. As a result of being wrongfully terminated Plaintiff is entitled to damages for loss of wages, salary and employment benefits, interest, liquidated damages and attorney's pursuant to FMLA, 29 U.S.C. § 2617.

**WHEREFORE**, Plaintiff Priscilla Troescher, demands judgment against Defendant, Burger Maker, Inc. for loss of wages, salary and employment benefits, interest, liquidated damages, cost of suit, attorneys fees and such other relief as this court deems just and proper.

## COUNT TWO
## VIOLATION OF THE NEW JERSEY LAW AGAINST DISCRIMINATION

22. Plaintiff repeats the allegation set forth above with the same force and effect as if stated herein at length.

23. Once Plaintiff informed Defendant that she was needed a reasonable accommodation, under N.J.A.C. § 13:13-2.5, it was required to engage in an interactive process to determine whether reasonable accommodations were available, including restructuring, or allowing a leave of absence.

24. Under section (b)(2) of the afore stated regulation Defendant was also required to first consider the possibility of reasonable accommodation before terminating Plaintiff's employment.

25. Defendant never offered Plaintiff a reasonable accommodation nor did it even consider the possibility of providing a reasonable accommodation and terminated her employment in violation of N.J.S.A. 10:5-12.12 a.

26. As a result of being wrongfully terminated Plaintiff has suffered additional emotional distress damage. She suffers from loss of self-esteem and self- confidence, and depression, among other symptoms and the emotional toll has been immense affecting her sleep, her relationships, and her sense of self-worth. Defendant's actions weigh heavily on her, causing

4

significant stress, sadness and a sense of injustice that she cannot shake. Plaintiff's mind has not stopped running from the financial stressors that she is now experiencing, and she suffers from extreme anxiety as she is uncertain about her future.

27. In addition her emotional distress damage, Plaintiff has also incurred a loss of income and employment benefits as a result she seeks the payment of back pay and benefits and the payment of front pay and benefits.

28. Plaintiff is also entitled to punitive damages as Defendant acted in wanton and willful disregard of Plaintiff's rights.

29. Plaintiff seeks the payment of attorney's fees pursuant to N.J.S.A. §10:5-27.1.

**WHEREFORE** Plaintiff, Priscilla Troescher, demands judgment against Defendant, Burger Maker, Inc., for compensatory damages including but not limited to back pay, front pay, emotional distress damage, punitive damages, equitable relief including reinstatement, pre-and post- judgment interest, attorney's fees, cost of suit, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT THREE
## NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT

30. Plaintiff repeats the allegation set forth above with the same force and effect as if stated herein at length.

31. On or about December 18, 2025 her Supervisor, Robert Ciallella, had accused Plaintiff of speaking to the New Jersey Department of Labor (DOL) which was investigating the company for misclassifying its employees. As a result of its investigation, the DOL had determined that eight 8 employees were misclassified as salaried and should have been paid overtime and as a result the company was required to pay each employee $5,000. As Plaintiff was one of the employees who was paid, he believed that she was the whistle blower.

5

32. Defendant's belief that Plaintiff was the whistleblower played a part in its decision to terminate her employment.

33. Although she was not the whistleblower, under New Jersey Conscientious Employee Protection Act, ("CEPA") 34:19-1 et seq. perceived whistleblowers are also protected.

**WHEREFORE** Plaintiff, Priscilla Troescher, demands judgment against Defendant, Burger Maker, Inc., for compensatory damages including but not limited to back pay, front pay, emotional distress damage, punitive damages, equitable relief including reinstatement, pre-and post- judgment interest, attorney's fees, cost of suit, and such other relief as the Court may deem just and proper under the circumstances.

## COUNT FOUR
## VIOLATION OF THE NEW JERSEY LAW WAGE PAYMENT ACT

34. Plaintiff repeats the allegation set forth above with the same force and effect as if stated herein at length.

35. On or about December 18, 2025 her Supervisor, Robert Ciallella, had accused Plaintiff of speaking to the New Jersey Department of Labor (DOL) which was investigating the company for misclassifying its employees. As a result of its investigation, the DOL had determined that eight 8 employees were misclassified as salaried and should have been paid overtime and as a result the company was required to pay each employee $5,000. As Plaintiff was one of the employees who was paid, he believed that she was the whistle blower.

36. Defendant's belief that Plaintiff was the whistleblower played a part in its decision to terminate her employment.

37. Her termination therefore also constitutes unlawful retaliation under the New Jersey Wage Payment Act, N.J.S.A. § N.J.S.A. § 34:11-4.10, which prohibits the discharge or

other retaliatory action against employees who have made or participated in wage-related complaints.

**WHEREFORE** Plaintiff, Priscilla Troescher, demands judgment against Defendant, Burger Maker, Inc., for compensatory damages including but not limited to back pay, front pay, emotional distress damage, punitive damages, equitable relief including reinstatement, pre-and post- judgment interest, attorney's fees, cost of suit, and such other relief as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. Plaintiff hereby demands a trial by jury on all issues so triable.

Stephen R. Bosin  
Stephen R. Bosin, Esq.  
70 Grand Ave. Suite 200  
River Edge, N.J. 07661  
(201) 342.4117  
Attorney for Plaintiff

Dated: August 8, 2025

If employees fail to explain the reasons for FMLA leave, the leave may be denied. Therefore, when employees seek to leave due to FMLA-qualifying reasons for which the Company has previously provided FMLA- protected leave, they must specifically reference the qualifying reason for the leave or the need for FMLA leave.

### Timing of Employee Notice

Employees must provide 30 days advance notice of the need to take FMLA leave when the need is foreseeable. When 30 days' notice is not possible, or the approximate timing of the need for leave is not foreseeable, employees must provide the Company notice of the need for leave as soon as practicable under the facts and circumstances of the specific case. Employees who fail to give 30 days' notice for foreseeable leave without a reasonable excuse for the delay or otherwise fail to satisfy FMLA notice obligations may have FMLA leave delayed or denied.

### Cooperate in the Scheduling of Planned Medical Treatment (Including Accepting Transfers to Alternative Positions) and Intermittent Leave or Reduced Leave Schedules

When planning medical treatment, employees must consult with the Company and make a reasonable effort to schedule treatment so as not to unduly disrupt the Company's operations, subject to the approval of the employee's health care provider. Employees must consult with the Company before the scheduling of treatment to work out a treatment schedule that best suits the needs of both the Company and the employees, subject to the approval of the employee's health care provider. Suppose employees providing notice of the need to take FMLA leave intermittently for planned medical treatment neglect to fulfill this obligation. In that case, the Company may require employees to attempt to make such arrangements, subject to the approval of the employee's health care provider.

When employees take intermittent or reduced work schedule leave for foreseeable planned medical treatment for the employee or a family member, including during a period of recovery from a severe health condition or to care for a covered servicemember, the Company may temporarily transfer employees during the period that the intermittent or reduced leave schedules are required, to alternate positions with equivalent pay and benefits for which the employees are qualified and which better accommodate recurring periods of leave.

When employees seek intermittent leave or a reduced leave schedule for reasons unrelated to the planning of medical treatment, upon request, employees must advise the Company of why such leave is medically necessary. In such instances, the Company and employee shall attempt to work out a leave schedule that meets the employee's needs without unduly disrupting the Company's operations, subject to the approval of the employee's health care provider.

### Submit Medical Certifications Supporting Need for FMLA Leave (Unrelated to Requests for Military Family Leave)

Depending on the nature of FMLA leave sought, employees may be required to submit medical certifications supporting their need for FMLA-qualifying leave. As described below, there generally are three types of FMLA medical certifications: an initial certification, a recertification, and a return to work/fitness for duty certification.

The employee is responsible for providing the Company with timely, complete, and sufficient medical certifications. Whenever the Company requests employees to provide FMLA medical certifications,