UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------------------x
**PRISCILLA TROESCHER**

                        **Docket No.: 2:25-cv-14357**

                **Plaintiff,**

    -against-

**BURGER MAKER, INC.,**

                **Defendant.**
------------------------------------------------------------------------x

## DECLARATION OF ROBERT CIALLELLA

**ROBERT CIALLELLA** declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1.     I have been employed with Burger Maker, Inc. ("Burger Maker") since April, 2018. Since June 2020, my title has been Vice President of Finance, Technology and H.R.

2.     I submit this declaration in support of Burger Maker's opposition to Plaintiff, Priscilla Troescher's ("Troescher" or "Plaintiff"), motion for a default judgment and to set aside the entry of default by the clerk of the court.

3.     Plaintiff was hired by Burger Maker on February 20, 2008. In March 2019, she transitioned to a different role as Accounts Receivable and Trade Spend Specialist.

4.     In this role, Plaintiff was responsible for working with our Food Service and Retail teams in ensuring accuracy with promotional spending allocated to retail partners as well as pricing related deductions for food service and national account customers. A pivotal component of Plaintiff's role was to close open orders from the previous day at the beginning of each day. Failing to do so would delay Burger Maker from collecting payment from its vendors and improperly state inventory levels which could cause errors with warehouse orders.

5. Since March 2019, I have been Plaintiff's supervisor.

6. Since Burger Maker's offices reopened following the Covid-19 Pandemic, company policy has required employees to work in office. In 2024, the finance team, which Plaintiff was a member of, required employees to be in office on Tuesdays, Wednesdays, and Thursdays.

7. Plaintiff refused to adhere to this policy. She would regularly email me stating she was working from home or simply not show up in the office.

8. In the summer of 2024, Plaintiff requested to work from home because her son was out of school, and she did not have any other childcare. I agreed to provide an exception, with the understanding that after Labor Day, September 2, 2024, she would begin coming in to the office as per company policy.

9. Between September 2, 2024, and January 2, 2025, the day Plaintiff was terminated, she came into the office on only one occasion.

10. On December 19, 2024, I placed Plaintiff on a Performance Improvement Plan ("PIP") to address multiple concerns with her work. (Ex. A)

11. In the plan, I documented that she had failed to timely close open orders on 11/21, 10/24, 8/27, 12/3, 12/5, 8/20, 8/19, 8/8, and 8/6.

12. Trade spend claims should be processed within forth-five (45) days yet Troescher had failed to complete a single one since July 2024.

13. Further, I cited several instances of her being unavailable during work hours despite not providing prior notice, as per company policy.

14. As part of the PIP, we scheduled weekly check-ins that would occur every Thursday between December 19, 2024, and January 19, 2025.

15. Plaintiff failed to appear to all of the weekly check-ins except for January 2, 2025.

16. On the morning of January 2, 2025, I received a notification that Plaintiff had attempted to upload a trade spend, but the system rejected it because she had failed to properly complete it. This trade spend was already more than six months overdue.

17. Between December 19, 2024, and January 19, 2025, this was Plaintiff's lone attempt to upload a trade spend, the primary function of her role. It is clear to me that this was a feeble attempt to show that she was completing her tasks.

18. In January 2025, Plaintiff attempted to use her paid time off ("PTO"), however, company policy requires advanced notice. As a result, her request was denied.

19. On information and belief, Plaintiff never made a request with the Human Resources department, or any other department, to take FMLA leave.

20. On January 24, 2025, Plaintiff was terminated for job abandonment, in violation of company policies. (Ex. B)

21. I made several attempts to inform Plaintiff of her termination by calling her personal phone and sending messages via Microsoft Teams. She failed to respond or return my calls, and I ultimately sent her an email informing her that had been terminated.

22. I understand Plaintiff is claiming that she was terminated for attempting to take FMLA that she was entitled to. This is false. Plaintiff exhausted her PTO and sick time, and refused to return to work when she was ineligible for further time off.

23. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Carlstadt, New Jersey
October 20, 2025

/s/ Robert Ciallella
**ROBERT CIALLELLA**